UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SHARIEFF CARSON,

                                    **Plaintiff,**                                        REPORT AND
                                                                                 RECOMMENDATION

      -against-

                                                                                       16-CV-4206 (LDH)

**TEAM BROWN CONSULTING, INC.,**

                                    **Defendant.**
------------------------------------------------------------x

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

      In this litigation under the Fair Labor Standards Act (the "FLSA" or the "Act"), plaintiff Sharieff Carson ("plaintiff") asks the Court to forgo a so-called "*Cheeks* review" of his proposed settlement agreement with defendant Team Brown Consulting, Inc. ("defendant"), because plaintiff intends to withdraw his lawsuit, without prejudice, pursuant to Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure (the "FRCP"). In the alternative, plaintiff requests additional time to make a *Cheeks* submission. For the following reasons, the Court respectfully recommends that plaintiff's request to forgo a *Cheeks* hearing be denied, and his request for additional time to submit *Cheeks* materials be granted.

## PROCEDURAL BACKGROUND

      Plaintiff initiated this litigation on July 28, 2016, alleging, on behalf of himself and others similarly situated, various violations of the FLSA and New York Labor Law ("NYLL"). See Complaint, DE #1. Among other things, plaintiff claimed that, from June 2014 to July 2016, he worked between forty-two and fifty-six hours per week as a "fire/security guard" for defendant, but failed to receive appropriate overtime pay pursuant to the FLSA and NYLL. See id. ¶¶ 12, 14–17. According to plaintiff, he was merely one of more than 100 putative class

members who could assert similar claims.  See id. ¶¶ 40–42.

Defendant failed to answer the Complaint by the appointed deadline, and plaintiff took no further action.  See Order to Show Cause (Oct. 13, 2016), DE #6.  Accordingly, on October 13, 2016, this Court ordered plaintiff to show cause why the case should not be dismissed for lack of prosecution.  See id.  That same day, defense counsel filed notices of appearance and settlement, requesting ten days to file the appropriate papers to close the case.  See Notice of Appearance, DE #7; Notice of Settlement, DE #8.  The Court granted the request, setting a deadline of October 24, 2016.  See Electronic Order (Oct. 14, 2016).

On October 20, 2016, plaintiff requested, with defendant's consent, a two-week extension of time to file a stipulation of dismissal, see Motion for Extension of Time to File, DE #9, and this Court granted plaintiff's motion in substantial part, see Electronic Order (Oct. 21, 2016). The Court reminded the parties that, as this is a case under the FLSA, any settlement would be subject to a review for fairness and reasonableness pursuant to the Second Circuit's decision in Cheeks v. Freeport Pancake House, 796 F.3d 199 (2d Cir. 2015).  See Electronic Order (Oct. 21, 2016).  The Court gave the parties until November 7, 2016 either to file papers sufficient for the District Judge assigned to this case to conduct a *Cheeks* review, or to consent to jurisdiction by this Court, at which point this Court would conduct a telephonic *Cheeks* hearing.  See id.

On November 3, 2016, defendant requested an additional extension of time,[1] until November 14, 2016, to file a stipulation of discontinuance and settlement agreement.  See

---

[1] Though defendant described this as "the first request for an extension[,]" that assertion was incorrect in light of the parties' prior request for an extension.  Compare Motion for Extension of Time to File (Nov. 3, 2016), DE #10, with Motion for Extension of Time to File (Oct. 20, 2016), DE #9.

Motion for Extension of Time to File (Nov. 3, 2016), DE #10.  "The parties have been working on the settlement," defendant stated, "but are seeking the Court's advice[,]" because "[t]he terms of the settlement will be directly impacted regarding whether [*Cheeks*] approval is necessary."  Id.  Defendant asked the Court to clarify whether *Cheeks* approval would be required in the event that the Complaint were dismissed or withdrawn without prejudice, as no answer or motion to dismiss had yet been filed.  See id.

In response to defendant's motion, the Court conducted a recorded telephone conference with the parties on November 4, 2016.  See Minute Entry (Nov. 4, 2016) ("11/4/16 Minute Entry"), DE #11.  During the conference, the Court informed the parties that the Honorable LaShann DeArcy Hall, the District Judge assigned to this matter, had specifically asked this Court to conduct a *Cheeks* review of their proposed settlement.  The Court attempted to ascertain the terms of the parties' settlement proposal and in what manner they believed that *Cheeks* approval would "directly impact[]" those terms, as defendant had claimed in its November 3rd letter.  See id.

In response to the Court's questioning, the parties provided a general overview of their contemplated settlement, indicating that plaintiff would agree to a broad liability release while his counsel, Abdul K. Hassan, would recover one-third of the proposed settlement as attorney's fees.  See id.  Mr. Hassan stated that a broad release would be acceptable to plaintiff under the circumstances because plaintiff's recovery pursuant to the proposed settlement agreement would—somewhat unusually—exceed the amount of overtime pay and liquidated damages to which he was entitled, and plaintiff was aware of no other claims that he might assert against

defendant. See id. Mr. Hassan declined to provide billing information for the Court to assess his fee recovery, stating that he was unprepared at that time for a *Cheeks* hearing. See id.

The parties also indicated during the November 4th conference that, in the event that the Court conducted a *Cheeks* hearing regarding their settlement, they would most likely narrow the accompanying liability release and reduce plaintiff's recovery—though neither party specified precisely to what extent. See id. Mr. Hassan, the attorney who had filed the unsuccessful appeal and petition for *certiorari* in Cheeks, emphasized that avoidance of the *Cheeks* hearing would make the settlement more attractive to the parties, as it would generate significant savings in time and cost. See id. The Court expressed skepticism that a brief telephone conference concerning the material terms of the settlement should have any such effect either on plaintiff's recovery or on the overall costs of this litigation, and directed the parties to file a letter by November 7, 2016 indicating whether they were willing to consent to jurisdiction by this Court to facilitate the *Cheeks* approval process and bring this matter to an end. See id.

On November 7, 2016, plaintiff filed a letter in response to the 11/4/16 Minute Entry. See Letter ("Pl. Mot."), DE #12. Mr. Hassan stated that, "*at this point*, the parties have not consented to Magistrate-Judge jurisdiction[,]" reiterated their request for an extension of time to file settlement papers, and renewed their inquiry concerning whether *Cheeks* approval would be necessary were this "action [to be] discontinued *without* prejudice." Id. at 1. "Based on [his] experience and dealings," Mr. Hassan "believe[d]" that three district judges and one magistrate judge in this District "agree that settlement and dismissal without prejudice does [sic] not require court approval under [Cheeks]"—though he cited just one unreported ruling as support. See id.

-4-

(citing Jimenez v. LGL2 Bronx Portfolio LLC, 15-CV-9331 (S.D.N.Y. Oct. 7, 2016), DE #32).

## DISCUSSION

Rule 41(a)(1)(A) of the FRCP provides in pertinent part:

Subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

> (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
>
> (ii) a stipulation of dismissal signed by all parties who have appeared.

"Unless the notice or stipulation states otherwise, the dismissal is without prejudice." Fed. R. Civ. P. 41(a)(1)(B). Absent an "applicable federal statute" then, Rule 41(a)(1)'s language is peremptory and self-executing regarding the effect of voluntary dismissal: No court approval or action is needed to close a lawsuit under the Rule. See, e.g., A.B. Dick Co. v. Marr, 197 F.2d 498, 501 (2d Cir. 1952) ("[V]oluntary dismissal of a suit leaves the situation . . . the same as though the suit had never been brought, thus . . . terminating jurisdiction over it . . . ." (internal citation omitted)).

Nevertheless, the Second Circuit has concluded that the FLSA is an "applicable federal statute" for purposes of Rule 41(a)(1)(A). See Cheeks v. Freeport Pancake House, 796 F.3d 199, 200 (2015). Accordingly, the Circuit Court held in Cheeks that, absent judicial approval, litigants may not settle FLSA claims through a private stipulated dismissal *with prejudice* pursuant to Rule 41(a)(1)(A)*(ii)*. See id. Cheeks left open, however, whether judicial approval is required to effect FLSA settlements involving stipulations of dismissal pursuant to Rule 41(a)(1)(A)*(i)*, or stipulations *without prejudice* pursuant to either subpart of the Rule. See id. at 200, 201 n.2.

In support of its holding in Cheeks, the Second Circuit cited both analogous Supreme Court precedent and the "unique policy considerations underlying the FLSA," which have led the Supreme Court to "consistently . . . interpret[] the Act liberally and afford[] its protections exceptionally broad coverage[,]" id. at 206, "even [for] those who would decline [them]," Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 302 (1985).  To illustrate the need for such oversight, the Circuit Court identified several FLSA settlement provisions, "recently rejected" by district courts, that "highlight[ed] the potential for abuse in such settlements, and underscore[d] why judicial approval in the FLSA setting is necessary."  Cheeks, 796 F.3d at 206.  "[H]ighly restrictive confidentiality provisions in strong tension with the remedial purposes of the FLSA"; "overbroad release[s] that would waive practically any possible claim"; "provision[s] that would set the fee for plaintiff's attorney at between 40 and 43.6 percent of the total settlement payment"—all of these recurring terms motivated the Second Circuit to ensure a more active judicial role in FLSA settlements, despite the FRCP's usual operation regarding stipulations of dismissal.  Id. (internal quotations and formatting omitted).

Since then, at least one court in this District has declared that Cheeks requires judicial approval of all dismissals entered pursuant to Rule 41(a)(1)(A) that involve a *quid pro quo* between the parties, no matter which subpart of the Rule applies.  See Martinez v. Ivy League Sch., Inc., No. 15-CV-7328(DRH)(GRB), 2016 WL 3582062, at *1 (E.D.N.Y. June 28, 2016). Additionally, at least two courts within this Circuit have issued written opinions reflecting that they have conducted *Cheeks* reviews of voluntary dismissals without prejudice.  See Lopez v. 41-06 Bell Blvd. Bakery LLC, No. 15-CV-6953 (SJ)(PK), 2016 WL 6156199, at *1 & n.1 (E.D.N.Y. Oct. 3, 2016) (noting that, while the stipulation of dismissal at issue purported to

dismiss the case without prejudice, under the terms of the proposed settlement agreement plaintiff agreed to "irrevocably and unconditionally" release defendants from any and all claims asserted in or related to the instant litigation), adopted by 2016 WL 6208481 (E.D.N.Y. Oct. 21, 2016); Velazquez v. SAFI-G, Inc., 137 F.Supp.3d 582, 583–84 (S.D.N.Y. 2015).

The Court is aware of no reported decisions that, absent a *Cheeks* review, have permitted dismissal without prejudice pursuant to Rule 41(a)(1)(A). In the one case cited by plaintiff, see Pl. Mot. at 1, the court merely stated, as one of several potential options for the parties to conclude the litigation, that the parties *could* forgo a *Cheeks* hearing by stipulating to dismissal without prejudice, see Jimenez v. LGL2 Bronx Portfolio LLC, No. 15-CV-9331 (S.D.N.Y. Oct. 7, 2016), DE #32; see also Martinez v. Gulluoglu LLC, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2–3 (S.D.N.Y. Jan. 15, 2016) (same); Beckert v. Rubinov, No. 15 Civ. 1951(PAE), 2015 WL 6503832, at *3 (S.D.N.Y. Oct. 27, 2015) (same). None of these decisions actually permitted such a dismissal, however, or addressed at all whether dismissal would be permissible, absent a *Cheeks* review, if accompanied by a broad liability release or other *quid pro quo*. See id. In fact, the parties to all these cases ultimately *did not* stipulate to dismissal without prejudice, instead submitting to a *Cheeks* review. See Jimenez, No. 15-CV-9331 (S.D.N.Y. Oct. 25, 2016), DE #34; Martinez, No. 15 Civ. 2727 (PAE) (S.D.N.Y. Feb. 11, 2016), DE #32; Beckert, No. 15 Civ. 1951(PAE) (S.D.N.Y. Dec. 14, 2015), DE #29.

This Court concludes that the language of Rule 41(a)(1) and the policy considerations addressed in Cheeks require a fairness review of FLSA settlements involving dismissal without prejudice pursuant to Rule 41(a)(1)(A)(i). The phrase "any applicable federal statute," the textual linchpin for the Cheeks decision, modifies both subparts (i) and (ii) of the Rule. See Fed.

-7-

R. Civ. P. 41(a)(1)(A). The language and structure of the Rule therefore permit only one interpretation: If the FLSA is an "applicable" exception to subpart (ii), then it must also be one to subpart (i). Nor does the Rule distinguish between dismissals with and without prejudice. Again, if the FLSA is an "applicable" exception to Rule 41(a)(1)(A), the text provides no basis for finding it "inapplicable" when dismissal is without prejudice. Indeed, the Rule assumes that stipulations of dismissal will be without prejudice, and subject to the "applicable federal statute" exception, unless the parties expressly specify otherwise. See Fed. R. Civ. P. 41(a)(1)(B). On its face then, Rule 41(a)(1)(A) specifies that an "applicable" exception—such as the FLSA—governs any dismissal under the Rule, no matter the circumstances.

Policy considerations provide additional support for this conclusion. At least two issues of particular concern to the Second Circuit in Cheeks are present here; perhaps unsurprisingly, they are also the primary aspects of the proposed settlement that the parties have declined to illuminate fully for this Court. *First*, though the precise terms have not been made clear to the Court, the parties have indicated that, in exchange for voluntary dismissal of this lawsuit without prejudice, plaintiff may release generally all possible claims against defendants. See 11/4/16 Minute Entry. This seems like precisely the type of "overbroad release" that "underscore[d]" for the Cheeks Court "why judicial approval in the FLSA setting is necessary[.]" 796 F.3d at 206. In what appears to be a tacit acknowledgment that such a release may not survive a *Cheeks* review, the parties indicated that they would narrow the release if the Court actually conducts such a review. See 11/4/16 Minute Entry. Given this admission, the Court fails to see how dismissal without prejudice, accompanied by a general waiver of potential claims, can be anything other than *de facto* dismissal *with* prejudice. Accordingly, even if the Court were to

credit the assertion that dismissal without prejudice raises no *Cheeks* concerns, it could hardly do so regarding the merely nominal dismissal without prejudice at issue here.

The Court recognizes the possibility that a broad release might be deemed unenforceable in these circumstances, potentially lessening the need for a *Cheeks* review; however, the realities of FLSA litigation, as well as considerations of judicial economy, nevertheless counsel in favor of such a review here.  In the FLSA context, where the Supreme Court and the Second Circuit have given broad sweep to protections for workers who often have inferior bargaining power, courts should hesitate before sanctioning any potential impediments to those workers' asserting their rights.  While it may be theoretically true that plaintiff here would be free to challenge the enforceability of the release if further litigation becomes necessary, the Court does not assume that the typical FLSA plaintiff will be aware of that possibility.  Nor does the Court hold out much hope that plaintiff's current counsel would be eager to reopen FLSA litigations after executing a settlement and collecting his fees, or that any new counsel would be willing to take on a previously litigated FLSA matter that from the outset poses an additional obstacle to recovery in the form of an ambiguously enforceable settlement agreement.  Even if these problems fail to materialize, the Court declines to endorse the obvious threat to judicial efficiency posed by a theoretically endless cycle of settlements without prejudice and subsequent challenges thereto.

*Second*, the parties have also informed the Court that Mr. Hassan will collect a sizeable attorney's fee—one-third of the proposed settlement sum, see 11/4/2016 Minute Entry—despite the fact that no substantive litigation took place in this matter beyond the filing of a complaint and settlement negotiations, cf. Cheeks, 796 F.3d at 206 (noting that inequitable attorney fee

recoveries also underscore the need for judicial approval of FLSA settlements); Velazquez, 137 F.Supp.3d at 585–86 (S.D.N.Y. 2015) (concluding that a contingency fee of one-third of a FLSA settlement was unreasonably high where plaintiff voluntarily dismissed his complaint before any answer was interposed).  This Court has previously expressed concern with Mr. Hassan's fee requests in FLSA matters, see, e.g., Memorandum and Order at 6–7, Socias v. Vornado Realty L.P., 13-CV-2151 (RLM) (E.D.N.Y. Nov. 3, 2016), DE #32, and his apparent reticence to provide support for his fee allocation here does nothing to allay such concerns.

The Court notes in closing the irony of the parties' purported anxiety that a *Cheeks* review will unnecessarily extend this litigation.  Over a month has passed since the parties first notified the Court that they had reached a settlement, simply because the parties refuse to undergo a brief telephonic hearing concerning the material terms of their agreement—information that should be readily accessible after settlement negotiations.  The Court very nearly completed its *Cheeks* inquiry during the November 4th call but was prevented from doing so only by the parties' aforementioned reticence to provide information concerning the scope of the liability release and the amount of attorney's fees.  The parties will hardly need to expend *any* additional resources to provide that information, and their unwillingness to do so speaks loudly in favor of *Cheeks* scrutiny.  The responsibility for any consequent delay in settlement lies therefore with counsel, not the Court.

## CONCLUSION

Accordingly, this Court respectfully recommends that plaintiff's request to forgo a *Cheeks* hearing be denied, and that his request for an extension of time to provide materials for the Court to conduct a *Cheeks* review be granted.

-10-

Any objections to this Report and Recommendation must be filed with the Honorable LaShann DeArcy Hall on or before **December 12, 2016**.  Failure to file objections in a timely manner may waive a right to appeal the District Court order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72.

SO ORDERED.

Dated:    Brooklyn, New York
          November 23, 2016

/s/    *Roanne L. Mann*
**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**